## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **METIN D. YAMAN** | ) | |
| 7487 Carriage Hills Drive, | ) | |
| McLean, VA, 22102 | ) | |
| | ) | |
| **Plaintiff,** | ) | Case Number: |
| | ) | |
| v. | ) | |
| | ) | |
| **HONORABLE RAYMOND E. MABUS, JR.** | ) | |
| Secretary of the Navy | ) | |
| Office of the Secretary of the Navy | ) | |
| 1000 Navy Pentagon | ) | |
| Washington, D.C. 20350-2000 | ) | |
| | ) | |
| **Defendant**. | ) | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Metin D. Yaman ("Mr. Yaman"), by and through undersigned counsel, files this

Complaint for Declaratory and Injunctive Relief against Secretary of the Navy The Honorable

Raymond E. Mabus, Jr., in his official capacity, alleging as follows:

## PRELIMINARY STATEMENT

1.  This action seeks to have the Plaintiff's disability be declared the result of a "combat-related

    injury" as defined by 26 U.S.C. § 104(b)(3), and therefore, his disability pay be declared tax-

    exempt and Plaintiff be declared all additional benefits as a result his "combat-related

    injury."

## PARTIES

2.  Plaintiff Metin D. Yaman was a Captain in the United States Marine Corps ("USMC") and is

    now honorably medically retired.

3. Defendant Raymond E. Mabus, Jr., is the Secretary of the Navy and is named in his official capacity as the head of the Department of the Navy ("DON"). The DON is an agency within the meaning of the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 *et seq*.

## JURISDICTION

4. The Secretary of the Navy's decisions were final agency decisions under the APA.

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1346, and the Fifth Amendment to the United States Constitution. Mr. Yaman raises claims arising under federal statutes and military regulations. The relief requested herein is authorized under 28 U.S.C. § 2201 (declaratory relief), 28 U.S.C. § 2202 (further necessary or proper relief), and 5 U.S.C. § 701 (the APA).

6. Venue is proper in this Court under 28 U.S.C. § 1391(e) because this is the judicial district in which Defendant, Raymond E. Mabus, is located and is where a substantial part of the events or omissions giving rise to the claim occurred.

7. In accordance with 28 U.S.C. § 2401(a), this action is brought within six years of the date Mr. Yaman was informed of the Secretary of the Navy's decision to deny Mr. Yaman the benefit provided by 26 U.S.C. §104(a)(4).

8. Mr. Yaman exhausted his remedies with the Board for Corrections of Naval Records ("the Board").

9. Mr. Yaman exhausted his remedies with the Internal Revenue Service ("IRS") by applying for tax refunds for all years his disability income was taxed. The IRS refunded the amount of disability income that was erroneously taxed.

## FACTUAL BACKGROUND

10. Mr. Yaman entered service in the USMC on May 14, 2004, when he was commissioned as a 2nd Lieutenant.

11. Serving as a ground intelligence officer, Mr. Yaman honorably and courageously served his country on active duty with the USMC for over seven years.

12. The USMC medically separated Mr. Yaman on June 15, 2011, due to injuries he sustained in an accident on September 22, 2008.

13. On September 22, 2008, on or about 6:00 AM, Mr. Yaman was driving his personal vehicle, a blue 1998 Ford Explorer, to his assigned place of duty at Camp Lejeune, North Carolina. Mr. Yaman was on active duty and in a duty status. Mr. Yaman was traveling along Marines Road, his usual route.

14. Camp Lejeune is a USMC base that is used for war simulations. Camp Lejeune encompasses paved roads used for travel by personnel, such as Mr. Yaman, while simultaneously using the paved roads for war simulations.

15. Unbeknownst to Mr. Yaman, a war simulation operation involving tanks commenced at approximately 5:10 AM the morning of September 22, 2008.

16. At the intersection of Marines Road and the Combat Town Road tank crossing point, a M1A1 Abrams Tank involved in a war simulation was crossing the road without warning and Mr. Yaman, rounding a curve in the road in his personal vehicle, collided with the tank, critically wounding Mr. Yaman.

17. At the time of the accident, the weather conditions were rainy with little to no light. Mr. Yaman was wearing his set belt and was driving within the posted speed limit. No use of alcohol, illegal drugs, or medications was detected at the time of the accident.

18. Mr. Yaman's vehicle sustained major damage consisting of crush damage to the entire front end, and induced damaged consisting of a broken drive-shaft, creases in the roof, a cracked and broken windshield, bent A and B pillars, a damaged dash board, and deployed airbags.

19. As a result of the collision, Mr. Yaman suffered catastrophic permanent injuries, including, but not limited to: spinal injury consisting of traumatic vertebral fractures, right common peroneal neuropathy, right sciatic neuropathy, knee ligament injury, a fractured right hand, broken ribs, collapsed left lung, and extensive bruising.

20. After the accident, Major Dallas Key was ordered to conduct a command investigation on the accident. After a thorough investigation, Major Key determined Mr. Yaman "was serving in the line of duty and that this accident did not occur as a result of his own misconduct."

21. This accident was a direct result of Bravo Company, 2d Tank Battalion's failure to follow the prescribed standard safety procedures for the conduct of tank crossings required by Division and Battalion orders.

22. Battalion Order and Division Training Standard Operating Procedures, applicable to this accident, cover war simulations with tanks to include "firing on the move and battle runs."

23. At the time of the accident, Bravo Company, 2d Tank Battalion, was conducting simulations of combat environments to include road and river crossings.

24. Bravo Company, 2d Tank Battalion, failed to ensure that the road guards were properly trained on the correct employment of all the safety measures specified in the applicable Battalion and Division orders, including, but not limited to, the following failures:

    a. The road guards did not maintain the required minimum 100 meters distance from the tank crossing point.

b.  The road guards did not employ a distress marker or flare 20 meters forward of their positions.

c.  The road guards did not display a flashlight at their positions.

25. After treatment at the Camp Lejeune Naval Hospital and Pitt Memorial Hospital, a Physical Evaluation Board ("PEB") was convened to determine whether Mr. Yaman could continue to serve in the USMC.

26. On May 17, 2010, Mr. Yaman received a disability rating, and the PEB determined Mr. Yaman's injuries would significantly interfere with his duties as an officer within the USMC. The PEB recommended Mr. Yaman be medically retired.

27. The PEB also determined that Mr. Yaman's disability did not result from a "combat-related injury" as defined by 26 U.S.C. § 104(b)(3).

28. On May 28, 2010, Mr. Yaman timely appealed the decision of the PEB to the United States Navy's Office of the Judge Advocate General ("OJAG"), challenging the determination his disability was "not a result of a combat-related injury."

29. The OJAG denied Mr. Yaman's appeal of the PEB's findings on June 22, 2010, without any legal analysis or explanation of its decision.

30. On June 28, 2010, Mr. Yaman requested that the OJAG reconsider the denial of his appeal of the PEB's findings.

31. The OJAG denied Mr. Yaman's request for reconsideration on July 12, 2010, without any legal analysis or explanation of its decision.

32. Mr. Yaman timely filed his original petition with the Board on July 20, 2010, requesting a change in the status of his records in accordance with 26 U.S.C. § 104, to exempt his disability pay from federal income taxation because he sustained a "combat-related injury."

33. The Board denied Mr. Yaman's petition on January 14, 2011. Even though Mr. Yaman had previously appealed the PEB's findings to OJAG, the basis for the Board's denial was that Mr. Yaman had not exhausted his administrative remedies by seeking relief from the OJAG. The Board provided no further reason as to why Mr. Yaman's disability pay should be taxable or why his injuries were not combat-related pursuant to 26 U.S.C. § 104.

34. On January 24, 2011, Mr. Yaman requested the Board reconsider his petition given that the Board failed to realize Mr. Yaman had already sought relief from the OJAG.

35. The Board again denied Mr. Yaman's request for reconsideration on December 5, 2011 explaining that Mr. Yaman had insufficient evidence to warrant a change in his status. The Board provided no further reason as to why Mr. Yaman's disability pay should be taxable or why his injuries were not combat-related pursuant to 26 U.S.C. § 104. The Board provided no further explanation or legal analysis.

36. On August 12, 2012, Mr. Yaman, through counsel, requested the Board reconsider its decision. On October 15, 2011, the Board denied Mr. Yaman's petition without any legal analysis or explanation of its decision.

37. Mr. Yaman appealed the Board's denial of his request for reconsideration to the Assistant Secretary of the Navy, Manpower and Reserve Affairs, on March 8, 2013.

38. The Assistant Secretary of the Navy denied Mr. Yaman's appeal on June 26, 2013.

39. As a result of the Secretary of the Navy's decision that Mr. Yaman's injuries were not combat-related, the IRS taxed Mr. Yaman's disability pay as taxable income.

40. Mr. Yaman filed four tax refunds for 2011, 2012, 2013, and 2014 for taxed disability pay, asserting his disability pay is non-taxable under 26 U.S.C. § 104(a)(4) because he sustained "combat-related injuries."

41. As a result of Mr. Yaman's petition, and after an IRS audit requiring supporting documentation, the IRS refunded Mr. Yaman in the amount of taxes he paid on his disability pay.

42. On June 28, 2015, Mr. Yaman requested reconsideration of the Board's decision based upon new evidence of the IRS exempting Mr. Yaman's disability income from taxation for all previous years since his discharge from the USMC.

43. On March 22, 2016, the Board denied Mr. Yaman's request for reconsideration.

## FIRST CAUSE OF ACTION
### (The Secretary of the Navy's Determination that Mr. Yaman Did Not Sustain a "Combat-Related Injury" is Contrary to Law)

44. The averments of the preceding paragraphs are incorporated as if fully set forth herein.

45. The Secretary of the Navy's decision to deny Mr. Yaman the benefit provided by 26 U.S.C. § 104(a)(4) violated federal law and the DON's policies and procedures. Mr. Yaman sustained a "combat-related injury." Under the applicable law, Mr. Yaman's disability pay is tax free and is entitled to all benefits related to this provision because the injuries resulted under conditions simulating war and by an instrumentality of war.

46. When calculating gross income for purposes of federal income tax liability, 26 U.S.C. § 104(a)(4) excludes "amounts received as pension, annuity, or similar allowance for personal injuries or sickness resulting from active service in the armed forces…."

47. To be excluded under 26 U.S.C. § 104(a)(4), the statute requires the pension, annuity, or similar allowance be made "by reason of a combat-related injury…."

48. "[C]ombat-related injury" is defined by 26 U.S.C. § 104(b)(3) as a personal injury that is incurred under conditions simulating war *or* that is caused by an instrumentality of war.

49.  "Instrumentality of war" is defined by Department of Defense Instruction ("DoDI") 1332.38 as "a vehicle, vessel, or device designed primarily for military service…."

50. DOD materials specifically provide that examples of instrumentalities of war are "tanks, armored personnel carriers, Bradley Fighting Vehicles, and other various combat vehicles."

51. Per DoDI 1332.38, "conditions simulating war" include "military training, such as war games, practice alerts, tactical exercises…."

52. Mr. Yaman's injuries were a direct result of a collision with "an instrumentality of war," the M1A1 Abrams Tank.

53. The present case involved the movement of several M1A1 Abrams Tanks from their staging area to a training area. Given a tank's uniquely military purpose, any operation involving a tank's movement results in a condition simulating war. Mr. Yaman was injured as a result of the crossing of a road carrying ordinary motor vehicle traffic by a uniquely military vehicle, the M1A1 Abrams tank, an instrumentality of war within the context of 26 U.S.C § 104(b)(3). The M1A1 Abrams tank is a device designed primarily for military service and was intended for use in such service at the time of Mr. Yaman's injury. A direct causal relationship exists between the instrumentality of war, the M1A1 Abrams tank, and Mr. Yaman's injuries and disabilities. Accordingly, Mr. Yaman's injuries and disabilities were sustained as a result of a condition simulating war.

54. Nothing in paragraph 3503 of SECNAVINST 1850.4E or 26 U.S.C. § 104(b)(3) takes the facts of this case out of the definition of a "combat-related injury."

55. For the foregoing reasons, acting through the PEB, OJAG, Board, and the Assistant Secretary of the Navy, the Secretary of the Navy's decisions to deny Mr. Yaman the benefit provided by 26 U.S.C. § 104(a)(4) was contrary to law.

56. Other than the relief requested in this Complaint, Mr. Yaman has no plain, speedy, or adequate remedy at law.

57. Mr. Yaman will suffer irreparable harm if this Court does not provide relief by invaliding the Secretary of the Navy's unlawful actions and declaring Mr. Yaman's disability pay is for a "combat-related injury," and therefore, is non-taxable income. Additionally, without the relief requested herein, Mr. Yaman cannot receive credit for any military service in his FERS retirement computation, as such credit is only allowed when retirement pay is awarded due to a service-connected disability caused by an instrumentality of war.

58. As demonstrated by the foregoing allegations, there is an actual controversy of sufficient immediacy and concreteness relating to the legal rights and duties of Mr. Yaman to warrant relief under 28 U.S.C. § 2201. As the IRS will continue to tax Mr. Yaman's disability pay as taxable income, harm to Mr. Yaman as a direct result of the Secretary of the Navy's conduct is sufficiently real and imminent to warrant the issuance of a conclusive declaratory judgment and injunction clarifying the legal rights of the parties. Additionally, unless relief is granted, Mr. Yaman will continue to be barred from receiving full benefits he is entitled to as a result of his "combat-related injury."

59. Therefore, Mr. Yaman is entitled to relief under 5 U.S.C. §§ 702 and 706(2)(A).

**<u>SECOND CAUSE OF ACTION</u>**
**(The Secretary of the Navy's Determination that Mr. Yaman Did Not Sustain a "Combat-Related Injury" is Not Based On Substantial Evidence)**

60. The averments of the preceding paragraphs are incorporated as if fully set forth herein.

61. The Secretary of the Navy's decision to deny Mr. Yaman full benefits provided by 26 U.S.C. § 104(a)(4) was not based on substantial evidence.

62. There is not substantial evidence the M1A1 Abrams Tank was not an instrumentality of war. Rather, there is no dispute that a tank is an instrumentality at war.

63. There is not substantial evidence conditions simulating war were not present at the time of the accident. Rather, it is without question that a tank involved in an exercise onboard a military installation, which constantly trains for war, is under conditions simulating war.

64. Even after the Secretary of the Navy determined Mr. Yaman's injuries were not combat-related, and thus his disability pay was taxable income, the IRS has refunded Mr. Yaman in the amount his disability pay was erroneously taxed as income for each year since his 2011 discharge.

65. For the foregoing reasons, acting through the PEB, the OJAG, the Board, and the Assistant Secretary of the Navy, the Secretary of the Navy's decision to deny Mr. Yaman the benefit provided by 26 U.S.C. § 104(a)(4) was not based on substantial evidence.

66. Other than the relief requested in this Complaint, Mr. Yaman has no plain, speedy, or adequate remedy at law.

67. Mr. Yaman will suffer irreparable harm if this Court does not provide relief by invaliding the Secretary of the Navy's actions, declaring Mr. Yaman's disability pay is for a "combat-related injury," and therefore, is non-taxable income. Additionally, without the relief requested herein, Mr. Yaman cannot receive credit for any military service in his FERS retirement computation, as such credit is only allowed when retirement pay is awarded due to a service-connected disability caused by an instrumentality of war.

68. As demonstrated by the foregoing allegations, there is an actual controversy of sufficient immediacy and concreteness relating to the legal rights and duties of Mr. Yaman to warrant relief under 28 U.S.C. § 2201. As the IRS will continue to tax Mr. Yaman's disability pay as

taxable income, harm to Mr. Yaman as a direct result of the Secretary of the Navy's conduct is sufficiently real and imminent to warrant the issuance of a conclusive declaratory judgment and injunction clarifying the legal rights of the parties. Additionally, unless relief is granted, Mr. Yaman will continue to be barred from receiving full benefits he is entitled to as a result of his "combat-related injury."

69. Therefore, Mr. Yaman is entitled to relief under 5 U.S.C. §§ 702 and 706(2)(E).

## THIRD CAUSE OF ACTION
**(The Secretary of the Navy's Determination that Mr. Yaman Did Not Sustain a "Combat-Related Injury" is Arbitrary, Capricious, and an Abuse of Discretion)**

70. The averments of the preceding paragraphs are incorporated as if fully set forth herein.

71. The Secretary of the Navy's decision to deny Mr. Yaman the benefit provided by 26 U.S.C. § 104(a)(4) was arbitrary, capricious, and an abuse of discretion.

72. In denying relief, neither the OJAG nor the Board provided any explanation as to why Mr. Yaman's injuries did not meet the definition of a "combat-related injury" under 26 U.S.C. § 104(b)(3).

73. At no point in time did the Secretary of the Navy provide Mr. Yaman any meaningful legal analysis or explanation as to why his injuries were not combat-related under the statute, and thus, taxable income.

74. The Secretary of the Navy's failure to provide a legal opinion that identified the law and policies regulating the action in question, identify the facts of the case relevant to the law and policy, and provide an analysis of the facts as they relate to the law and policy was arbitrary, capricious, and an abuse of discretion.

75. The IRS has refunded Mr. Yaman the amount of income taxes he paid on his disability pay that should have been tax-exempt. The Board failed to consider the IRS' treatment of Mr.

Yaman's disability pay as tax-exempt, further rendering any determinations that the disability pay is taxable under 26 U.S.C. § 104 arbitrary, capricious, and an abuse of discretion.

76. Based on the foregoing, by acting through the PEB, the OJAD, the Board, and the Assistant Secretary of the Navy, the Secretary of the Navy's decision to deny Mr. Yaman the benefit provided by 26 U.S.C. §104(a)(4) was arbitrary, capricious, an abuse of discretion.

77. Other than the relief requested in this Complaint, Mr. Yaman has no plain, speedy, or adequate remedy at law.

78. Mr. Yaman will suffer irreparable harm if this Court does not provide relief by invaliding the Secretary of the Navy's arbitrary and capricious actions, declare Mr. Yaman's disability pay is for a "combat-related injury" and is therefore non-taxable income, and allow Mr. Yaman to receive his full benefits.

79. As demonstrated by the foregoing allegations, there is an actual controversy of sufficient immediacy and concreteness relating to the legal rights and duties of Mr. Yaman to warrant relief under 28 U.S.C. § 2201. As the IRS will continue to tax Mr. Yaman's disability pay as taxable income, harm to Mr. Yaman as a direct result of the Secretary of the Navy's conduct is sufficiently real and imminent to warrant the issuance of a conclusive declaratory judgment and injunction clarifying the legal rights of the parties.  Additionally, unless relief is granted, Mr. Yaman will continue to be barred from receiving full benefits he is entitled to as a result of his "combat-related injury."

80. Therefore, Mr. Yaman is entitled to relief under 5 U.S.C. §§ 702 and 706(2)(A).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Metin Yaman prays that this honorable Court order a speedy hearing of a declaratory judgment action pursuant to Fed. R. Civ. P. 57, enter judgment in his favor, and:

a.  Declare, retroactive to June 15, 2011, that Mr. Yaman's disability resulted from a "combat-related injury" under 26 U.S.C. § 104(b)(3);

b.  Declare Mr. Yaman's disability pay is tax-exempt pursuant to 26 U.S.C. § 104(a)(4) and be awarded full benefits;

c.  Vacate and set aside the decisions of the Secretary of the Navy;

d.  Permanently enjoin the Secretary of the Navy and his officers, agents, employees, and successors, and all persons acting in concert or participating with the DON, from enforcing a determination that Mr. Yaman's injuries are not combat-related or that his disability pay is taxable;

e.  Order the Secretary of the Navy to immediately take reasonable steps to correct Mr. Yaman's military records, to include his DD-214, to reflect his disability resulted from a "combat-related injury";

f.  Award Mr. Yaman incurred reasonable attorney's fees and costs in accordance with the Equal Access to Justice Act, 28 U.S.C. § 2412; and

g.  Grant such other and further relief as to this honorable Court seems necessary or appropriate to afford full and complete relief.

Dated:  May 6, 2016                                          Respectfully submitted,


ERIC S. MONTALVO
THE FEDERAL PRACTICE GROUP
WORLDWIDE SERVICE
1750 K St., Suite 900
Washington, D.C. 20006
(202) 862-4360 Telephone
(888) 899-6053 Facsimile
emontalvo@fedpractice.com
D.C. Bar No. 993206

*Attorney for Plaintiff*